UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Joshua Adam Schulte,

Plaintiff-Appellant

v.

United States of America, et al.,

Defendants-Appellees.

Docket Nos.
25-740
25-742
25-745
25-748
25-751
25-752
25-757
25-758

DECLARATION IN SUPPORT OF
PLAINTIFF-APPELLANT'S MOTION FOR
SUMMARY REVERSAL OF THE DISTRICT
COURT'S SUA SPONTE DISMISSAL ORDER
OF ALL COMPLAINTS

JOSHUA ADAM SCHULTE, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury that the foregoing is true and correct:

1. I am a pro se Plaintiff-Appellant currently incarcerated at the Administrative Maximum (ADX) Penitentiary — the highest security federal prison — in Florence, Colorado.

2. The sources of my information and the grounds for my beliefs are the civil complaints, record of proceedings in the District Court, personal experiences, applicable legal authorities, and the other materials comprising the files in this case.

## I. STATEMENT OF RELIEF SOUGHT

3. As will be argued in the attached Memorandum of Law ("Motion"), I respectfully believe that District Judge Eric R. Komitee made clearly erroneous factual determinations, legal determinations contrary to clearly established law, and committed clear, reversible error that warrants the extraordinary relief of summary reversal by Motion pursuant to Fed. R. App. P. 27 rather than a full merits briefing.

4. In his Dismissal Order ("Order") at issue here, Judge Komitee erroneously sua sponte dismissed 8 civil complaints pursuant to 28 U.S.C. § 1915(e)(2)(B), itself contrary to clearly established

Decl 1

Circuit precedent, and based his decision on affirmative defenses he raised to the complaints sua sponte, res judicata for issues previously adjudicated on improper venue grounds, and abrogations to Supreme Court and Circuit precedent; all of which contradicts clearly established law.

5. Judge Komitee also erred by denying my request to the appointment of counsel.

6. Accordingly, I seek the following relief:

(i) Reversal of all 8 dismissed cases

(ii) Joining of 2 related complaints

(iii) Reversal of denied appointed counsel

(iv) Remand to a different district court judge

# II. FACTS

## A. Convictions and Incarceration

7. I was arrested in August 2017, partially convicted at a trial in 2020, convicted in 2022, convicted in 2023, and sentenced in 2024.

8. Although the government offered a coercive 0-10 yr plea deal for the Espionage case before trial, the government sought life imprisonment at sentencing, arguing for the Terrorism Enhancement and other enhancements they did not indicate in their Pimentel Letter.

Decl 2

9. The district court therefore imposed a 30+ year trial penalty.

10. I am currently on appeal, raising numerous significant challenges the the false convictions, including, inter alia, Rule 16 and fair trial violations as the government refused to provide the defense access to the three primary computers in the government's case-in-chief; Rule 29 issues related to the CFAA charges, as there was no computer hacking per Van Buren v. United States, 141 S.Ct. 1648 (2021) and United States v. Valle, 807 F.3d 508, 523 (2d Cir. 2015); Rule 29 issues related to the fraudulent MCC charges (see II.B #12-20); challenges to the Espionage Act as President Donald J. Trump himself argued (see e.g. U.S. v. Trump, 23-80101 (S.D. Fla.), DKts. 325 & 398); illegal search and seizures conducted without warrants, without sufficient nexus, and containing deliberately fabricated information; speedy trial issues; self-representation issues; and many others.

11. I am confident that all my false convictions are erroneous, and that according to U.S. law, they should not only be vacated, but I should be cleared of any and all wrongdoing. Whether the courts will honor their oaths and abide by the law, though, remains to be seen.

B. Implementation of Special Administrative Measures (SAMs)

12. SAMs were imposed pursuant to alleged misconduct at the Metropolitan Correctional Center (MCC) in New York. The government

Decl 3

determined I was guilty of transmitting and attempting to transmit national defense information from the MCC without a trial, and instituted indefinite SAMs to punish me with cruel and unusual torture pretrial.

13. A jury hung on the counts predicated for the SAMs but I was found not guilty by Rule 29 motion in 2020.

14. The government kept me on SAMs, arguing I was guilty of conduct I had been found not guilty.

15. The government eventually re-indicted and convicted me of the same conduct in 2022.

16. The alleged materials "transmitted" pertaining to Htcock, were plainly marked unclassified by the CIA, were not closely held, and were not national defense information.

17. The alleged materials "attempted" to be transmitted were never attempted to be transmitted, were not classified CIA documents but hand-written notes in notebooks marked Attorney-Client Privilege, and were definitively not national defense information.

18. I did not believe any information to be classified, national defense information, or sensitive in any way whatsoever; nor did I willfully transmit or attempt to transmit any such information.

19. The government sought to claim materials as "classified" ex post facto and ipse dixit simply to engage in prosecutorial misconduct and false prosecution.

Decl 4

20. I am plainly not guilty of the misconduct for which my SAMs were based, and have been unlawfully tortured for nearly a decade for no reason whatsoever.

21. I have raised challenges to my SAMs in many courts; the criminal district court ruled I must challenge my SAMs in a separate civil case, but when filed in a separate civil case, that judge ruled I must file in my criminal district court; no court would even hear my arguments, and on appeal this Circuit dismissed the case on summary motion without adjudicating upon the merits.

22. It is my experience that federal courts do not read pro se submissions, particularly from poor, incarcerated individuals. The poor have no access to the courts, no constitutional rights, and no redress of grievances; it is a pay-to-play club only for attorneys and the wealthy.

C. Conditions of Confinement

23. Although the SAMs do not so specify, the BOP has used SAMs as an excuse to torture SAMs inmates in special concentration camps.

24. These concentration camps are worse than Russian, Chinese, and Syrian prison camps, routinely subjecting SAMs inmates to the extreme cold without heat, warm clothing, or blankets; filthy torture cages infested with

Decl 5

rodents and cockroaches without cleaning materials; speakers in the cells to blast loud noises 24/7; 24/7 live monitoring; 24/7 solitary confinement; 24/7 light; the ban from institutional resources and privileges such as commissary, television, radio, libraries, recreation, and arbitrary limitations on others such as 5% phone minutes, limited non-contact visitation, and limited ability to receive correspondence and books; SAMs inmates are tortured through limited and reduced meals, subjecting them to starvation and significant weight loss; SAMs inmates are often significantly limited in their access to the law library, their discovery, or any ability to assist in their own defense — notwithstanding the willpower to do so in spite of the torture imposed upon him, both psychological and physiological.

25. SAMs are also indefinite. They are routinely rubber-stamped each year, rendering the supposed limitation non-existent and the torture indefinite.

D. Other Civil Suits

26. Many civil suits have been filed since the government began torturing me in 2016.

27. Up until the Order, no civil suit I have ever filed has been dismissed — except the challenge to SAMs in which both the criminal district court and civil court ruled they had no jurisdiction and directing me to file in the other court in a circle of oppression.

28. Two SDNY civil cases were assigned to Fordham University; both have survived motions to dismiss and summary judgment.

Decl 6

## III. SUFFICIENTLY PLED COMPLAINTS

29. As will be argued in the Motion, all complaints are successfully pled to survive 28 U.S.C. §1915 dismissal. But even if they were not, "[g]enerally, leave to amend should be freely given, and a pro se litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

30. Judge Komitee did not provide me notice of his intent to dismiss my complaints, notice of the perceived defects, or an opportunity to examine and propose amended complaints.

31. It must be noted that all complaints were based off successfully filed complaints initiated by attorneys.

32. It thus appears that Judge Komitee held me to a higher standard than typical attorneys and afforded me no "special solicitude" — but rather the opposite.

33. What was apparently acceptable for an attorney to survive dismissal and reach settlement was unacceptable for an incarcerated pro se IFP plaintiff.

Decl 7

A. "RFRA" / 25-752 / EDNY 24-CV-332

34. The 7-page complaint was docketed 1/11/24 as 24-CV-332.

35. The complaint enumerates 2 causes of action, related to violations of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, et seq.

36. The complaint resembles, and is predicated on, the Supreme Court's decision in Tanzin v. Tanvir, 592 U.S. 43 (2020).

37. Judge Komitee addresses the complaint on pages 8-9 of the Dismissal Order, claiming it is "plainly meritless."

38. Judge Komitee asserts "[t]he federal government has not waived its sovereign immunity under RFRA."

39. Judge Komitee does not address the Second Cause of Action, Complaint at 6-7, which seeks damages "for each individual warden's violation of the RFRA." # 26-28.

40. The RFRA provides a claim "to persons whose religious exercise is substantially burdened by government." §§ 2000bb(b)(2).

41. The right of action enables a person to "obtain appropriate relief against a government." § 2000bb-1(c).

42. A "government" is defined to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." § 2000bb-2(1).

Decl 8

43. The Supreme Court determined that "[b]ecause RFRA uses the same terminology as §1983 in the very same field of civil rights law, it is reasonable to believe that the terminology bears a consistent meaning." Tanzin, 592 U.S. at 48.

44. The Supreme Court also found that the "RFRA provides, as one avenue for relief, a right to seek damages against Government employees." Id. at 51.

45. The Order plainly failed to address this valid claim against MDC wardens in their individual capacities.

B. "React Book" / 25-751 / EDNY 23-CV-5241

46. The 4-page complaint was docketed 7/7/23 as 23-CV-5241.

47. The defendant took no steps to enter a notice of appearance.

48. The court took no steps to advance the case.

49. The complaint enumerated a single count for the return of an illegally seized book pursuant to ~~xxxxxxxxxxx~~ the First and Fifth Amendments.

50. The case resembles Shakur v. Selsky, 391 F.3d 106 (2d cir. 2004) as there was no reasonable penological purpose for the book's confiscation.

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

Decl 9

51. Judge Komitee does not appear to mention or explain this case and why it was dismissed.

C. "Incoming Mail"/25-748/EDNY 23-CV-5488

52. The 4-page complaint was docketed 8/3/23 as 23-CV-5488.

53. The defendant never entered a notice of appearance.

54. The court took no steps to advance the case.

55. The complaint enumerated a single count for modification of SAMs pursuant to 28 U.S.C. § 2241; all incoming mail without FBI review.

56. The complaint seeks relief based on the First Amendment.

57. Judge Komitee's Order does not specifically address this complaint, but may reference it implicitly on pages 4-5, asserting that "Schulte's Section 2241 petitions are now moot because of his departure from the MDC."

58. My SAMs transcend whatever prison I am incarcerated; and therefore are not traditional conditions of confinement; since the SAMs follow me wherever I go in the BOP they do not become moot by changing prisons.

59. Many SAMs inmates file for modification in Washington D.C. since the SAMs are instituted by Department of Justice Headquarters, or other district courts outside their current district of confinement; cf.

Decl 10

Kaboni Savage v. U.S. Department of Justice, 21-CV-1057 (DDC) (seeking modification to SAMs from D.C. district court while incarcerated in Colorado).

60. Regardless, both exceptions to mootness apply here.

61. Capable of Repetition yet Evading Review : "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 462 (2007).

62. Voluntary Cessation: Defendant must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the offsets of the alleged violation." Mhany Mgmt., Inc. v. County of Nassau, 819 F.3d 581, 603 (2d Cir. 2016).

D. "Monetary Damages from MDC"/25-758/ EDNY 23-CV-8513

63. The 25-page complaint was docketed 11/14/23 as 23-CV-8513.

64. The complaint enumerates 10 causes of action, related to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

65. The complaint resembles a similar suit for similar actions

Decl 11

I suffered at the MCC, Schulte v. United States, 21-cv-4042(JMF) (SDNY), which has survived to the depositions and trial preparation phase under Fordham University's Law Clinic.

66. Judge Komitee addresses the FTCA claims in the complaint on pages 5-8 of the Order, asserting that the FTCA claims have "not adequately alleged presentment and final denial."

67. Judge Komitee's Order does not specifically address the Bivens claims, but may reference it implicitly on pages 8-9 where he asserts they are "plainly meritless" as "national security is at issue."

68. The complaint notes on pages 2 and 14 that multiple FTCA notices were filed; this is sufficient under Fed. R. Civ. P. 8.

69. Assertions of inadequate presentment under the FTCA are affirmative defenses for which the Supreme Court has expressly noted that 28 U.S.C. § 1915 does not require prisoners to anticipate in their complaint. Jones v. Bock, 127 S. Ct. 910, 920 (2007).

70. The complaint's Bivens claim seeks damages for deliberate indifference to serious medical need, ¶¶ 108-116, and does not implicate national security.

E. "Laptop"/25-742 & 25-757/EDNY 22-cv-5841 & 23-cv-5656

71. There exist two complaints for the same laptop issue.

Decl 12

72. The initial complaint was erroneously dismissed while an amended complaint was pending.

73. Both complaints should be reversed as to their dismissal and joined.

1. Relevant Facts

74. See 23-CV-5656 DKt 1 Complaint for full details.

75. After the government damaged my trial laptop, I consented to the government's hard drive replacement into a new laptop under strict stipulations that the government not turn on the laptop, login, or conduct any search; the government acknowledged and agreed on the record before a federal judge who admonished the government to adhere to those stipulations.

76. Upon receipt of the laptop, the government immediately violated all agreements and conducted a warrantless search of the laptop.

77. The government claimed to the court that the laptop's security had been "tampered" with and they believed the laptop could be used to connect to the internet, or otherwise evade security precautions.

78. The government requested its agents re-secure the laptop to ensure it could not connect to the internet and all security settings were intact; the court so ordered them to do so, which it did then returned the laptop.

Decl 13

79. The laptop had, in fact, never been "tampered" with, could not connect to the internet even if it had been as the government had physically removed the wireless adapter, and all security mechanisms were never disabled.

80. I then used the laptop at the 2022 trial, and was found guilty.

81. Shortly after the trial the government swore out a search warrant in the Eastern District of New York, relying upon fruits of its warrantless search of the laptop as well as deliberate lies again asserting the laptop's ability to connect to the internet notwithstanding the absence of a wireless adaptor and the government's previous checks and assurances to a federal judge on the record that the laptop could not connect to the internet.

82. The government then seized the laptop at the Metropolitan Detention Center (MDC) in the Eastern District of New York.

83. I moved orally for the return of the laptop at a hearing before my criminal case judge in the Southern District of New York, pursuant to Fed. R. Crim P. 41(g).

84. The district judge denied the motion due to improper venue, as Rule 41(g) specifies the motion must be raised in the seizure's district.

85. As the merits were not adjudicated, no res judicata preclusion took effect.

Decl 14

## 2. Filing of 22-CV-5841

86. As the search was plainly unconstitutional, I was unable to work on my Fed. R. Crim. P. 29 motion, or assist in my own defense, I took the Judge's advice and formally filed for Rule 41(g) relief in the proper venue, EDNY, docketed as 22-CV-5841 on 9/23/22.

87. I filed an Amended Complaint adding Bivens and other claims on 2/16/23, Dkt#15.

88. While the Amended Complaint was pending, Judge Komitee dismissed the civil case, in its entirety, without addressing the new claims.

89. Judge Komitee's Dismissal, 5/25/23 (Dkt#24), was predicated on res judicata; he argued that my denied oral motion in the SDNY for improper venue precluded me from raising the issue in the correct venue in the EDNY.

90. I promptly moved for reconsideration, which was denied as moot pursuant to the Dismissal Order of 9/4/24 at issue here.

## 3. Filing of 23-CV-5656

91. My amended complaint was erroneously filed as a successive civil action, docketed as 23-CV-5656 on 7/24/23.

92. The new complaint contained counts not in the original complaint, including Bivens and Rule 41(g) of seized discovery drives, inter alia.

Decl 15

93. Judge Komitee did not advance the case.

94. I filed several letters, including a request for assignment of counsel as I could not access parts of the record or conduct my own litigation due to the complexities and other issues.

95. Judge Komitee then dismissed this complaint on pages 4 n.3 of the Dismissal Order, claiming that "[T]he purported Rule 41(g) Claim in Denton is indistinguishable from the claim dismissed in ... 22-CV-5841...," which this court will not revisit."

96. The complaints in 22-CV-5841 and 23-CV-5656 are radically different.

97. The dismissal of 22-CV-5841 itself was without prejudice.

98. The Order does not address the Bivens claims or any other claims in 23-CV-5656.

F. "Habeas"/25-740/EDNY 22-CV-766

99. The 18-page complaint was docketed 2/7/22 as 22-CV-766.

100. The complaint seeks injunctive relief for unconstitutional prison conditions pursuant to 28 U.S.C. § 2241. See Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008).

101. The conditions were purportedly implemented pursuant to Special Administrative Measures and therefore exist independent of any

Decl 16

particular prison.

102. Judge Komitee addresses the complaint on pages 4-5 of the Order, asserting that they are all dismissed for Mootness.

103. Upon transfer to ADX, some of the conditions remain and others were voluntarily stopped.

104. Judge Komitee neglected this case for 18 months until I filed a mandamus petition for this Court to order Judge Komitee to advance the case; see Dkt. 23.

105. Judges routinely neglect pro se complaints of civil rights violations in pretrial detention centers.

106. Due to this neglect, the federal government ensures pretrial detention centers torture pretrial detainees and violate their civil rights to coerce guilty pleas so prisoners are transferred to more humane prisons.

107. I have personally spoken to numerous prisoners who pled guilty simply to leave unconstitutional conditions of confinement at pretrial detention centers.

108. This conduct appears unchecked by the federal courts and the current mootness doctrine.

Decl 17

G. "Commissary" / 25-745 / EDNY 23-cv-4855

109. The 5-page complaint was docketed 6/26/23 as 23-cv-4855.

110. The defendant never entered a notice of appearance.

111. The court took no steps to advance the case.

112. The complaint sought relief from unconstitutional conditions of confinement pursuant to 28 U.S.C. § 2241.

113. Judge Komitee addresses the complaint on pages 4-5 of the order, asserting that they are all dismissed for mootness.

## IV. DENIAL OF MOTION FOR COUNSEL WAS ERROR

114. I wrote several letters seeking assignment of pro bono counsel in laptop case 23-cv-5656, including docket #6 and 7.

115. There exists ~~two~~ transcripts confirming that the government was explicitly told by a federal judge not to turn on, access, or search my laptop and the government's subsequent disregard of this order.

116. There exists transcripts of the government confirming the laptop is secure and cannot access the internet, in stark contrast to deliberately fabricated search warrant affidavits claiming the opposite.

117. The government has sealed these transcripts and concealed them both from the public and myself after filing them in this case to

Decl 18

Conceal their treachery and corruption.

118. The government has deliberately obstructed my ability to litigate this case.

119. If not for the obstruction, the facts support a strong likelihood of success on the merits for this case.

# V. REASSIGN DISTRICT JUDGE ON REMAND

120. I did not seek 42 U.S.C. § 1983 relief in any complaint.

121. The Bivens complaints did not involve national security.

122. The 4(69 claims had been previously rejected on improper venue grounds.

123. Judge Komitee lied about alleged facts pertaining to the FTCA claims.

124. I do not seek habeas relief in the 7/24/24 letter, 23-CV-5656, Dkt. 8, but outline the impossibility of litigation and renew my requests for pro bono counsel.

# VI. CONCLUSION

For all the reasons stated above and the accompanying Memorandum of Law, this Court should reverse and grant the relief sought in #6.

Respectfully Submitted,

Dated: April 29, 2025

Josh Schulte #79471054
pro se plaintiff

Decl 19

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Schulte

**CERTIFICATE OF SERVICE***

v.

Docket Number: 25-752, 25-751, 25-748, 25-758, 25-742, 25-757, 25-740, 25-745

United States, et al.

I, _Josh Schulte_, hereby certify under penalty of perjury that
(print name)

on _5/6/25_, I served a copy of _Memorandum of Law_
(date)
_In Support of Motion for Summary Reversal, Declaration in Support_
(list all documents)
_of Summary Reversal_

by (select all applicable)**

___ Personal Delivery          ✓ United States Mail          ___ Federal Express or other
                                                                    Overnight Courier

___ Commercial Carrier         ___ E-Mail (on consent)

on the following parties:

David A. Cooper, 271-A Cadman Plaza East - 7th Fl. - Brooklyn, NY 11201
Name                Address                City        State    Zip Code

Varuni Nelson, 271-A Cadman Plaza East - 7th Fl. - Brooklyn, NY 11201
Name                Address                City        State    Zip Code

Name                Address                City        State    Zip Code

Name                Address                City        State    Zip Code

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

_5/6/2025_                                      _[signature]_
Today's Date                                    Signature

Certificate of Service Form (Last Revised 12/2015)

Case: 25-752, 05/20/2025, DktEntry: 29.1, Page 22 of 22

Name:
Reg No.
U.S. Penitentiary MAX
P.O. Box 8500
Florence, CO. 81226-8500

CM-25-085



Deraxxx, CO PBOC 802-3
TUE 13 MAY 2025 PM

ATTN: Schulte v. United States,
25-752, 25-751, 25-748, 25-758
25-742, 25-757, 25-740, 25-745

United States Court of Appeals for the 2nd Circuit

40 Foley Square

New York, NY 10007



USM 4IL
SDN Y

U.S. OFFICIAL MAIL     PENALTY FOR
                      PRIVATE USE $300
US POSTAGE (IM) PITNEY BOWES
                      Correction
ZIP 81226    $ 000.001
02 7H
0005951581    MAY 08 2025